IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBINA JENKINS,                    )
                                   )
        Plaintiff,                 )
                                   )        CIVIL ACTION
v.                                 )        NO:2:05cv1049-C
                                   )
NANCY WORLEY, individually         )
and in her official capacity as    )
Secretary of State, State of       )
Alabama; et. al.,                  )
                                   )
        Defendants.                )

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, by and through the undersigned counsel, hereby files this Brief in Support of their Motion for Summary Judgment as follows:

### SUMMARY OF PLAINTIFF'S CLAIMS

Plaintiff's Complaint contains four counts, all of which are based upon alleged violations of the Alabama State Merit System Law and the Fourteenth Amendment to the United States Constitution. The first three counts are brought against Nancy Worley (hereinafter "Worley") in her individual and official capacity. The fourth count is against the "State Personnel Board," although the Board is not a named defendant. Rather, the individual members of the Board are named as defendants in their individual and official capacity.

Robina Jenkins, was a merit system employee classified as a Departmental Program Manager with the Alabama Secretary of State's Office. Plaintiff's in-house working title was Corporations Director. Due to budget constraints, the Plaintiff, among other employees, was laid off. Another merit system employee

(an Administrative Support Assistant III) assumed Plaintiff's job duties and the in-house working title of "Acting Director, Corporate Division."

In Count I of Plaintiff's Complaint, Plaintiff claims that her layoff was in violation of the Rules of the State Personnel Board because her seniority and service ratings were not considered.

Count II involves a claim that an individual was appointed into Plaintiff's classification and that she should have been offered reemployment.

Count III alleges that an individual was hired into Plaintiff's classification without the individual being on the State Employment Register.

Count IV is against the State Personnel Board and claims that the Board did not investigate the allegations raised by the Plaintiff and that they did not require Worley to abide by the Rules of the State Personnel Board.

Each of these counts will be discussed separately.

FACTS

Plaintiff, Robina Jenkins, was employed in 2003 by the Alabama Secretary of State's Office as a Departmental Program Manager (Class Code 11980). Plaintiff was appointed to that classification in 1997 by then Secretary of State, Jim Bennett. (Exhibit 1 - Deposition of Plaintiff, p. 12, l. 3-5). Plaintiff's "working title" in the Secretary of State's office in 2003 was Corporations Director. (Exhibit 1 - Deposition of Plaintiff, pp. 11-12, l. 23-2).

In 2003, the Alabama State Legislature cut the budget of many state agencies, including the Alabama Secretary of State's office. Hundreds of employees throughout state government were affected by layoffs, retirements,

2

voluntary demotions, and transfers as a result of the budget cuts. (Exhibit 3 - Affidavit of Jackie Graham, ¶ 2).

The Office of the Secretary of State's budget was initially recommended by Governor Bob Riley in February of 2003 to be cut 18.85%. After the Office of Voter Registration was legislatively moved into the Office of the Secretary of State, the budget, which passed in September 2003, represented a cut of 12%. However, the "additional" appropriated money could mainly be used for federal matching money under HAVA (Help America Vote Act), so the actual effect on the budget was an 18% cut. (Exhibit 5 - Affidavit of Carolyn Middleton, ¶ 7).

In order to implement the budget cuts in her office, then Secretary of State (Defendant Nancy Worley) met with the Finance Director to review current programs and personnel. The budgets of the Secretary of State and the Office of Voter Registration, which was legislatively moved into the Secretary of State's Office, were reviewed and options discussed concerning possible budget savings. (Exhibit 2 - Notarized Interrogatory Answers of Nancy Worley). Closing the warehouse, employee attrition, and the need for the budget cuts to affect programs and services as little as possible were all discussed. In addition to some "Laborer" cuts, it was decided to try and layoff or abolish one position per program category. (Exhibit 2 - Notarized Interrogatory Answers of Nancy Worley).

A layoff plan by Worley was thereafter submitted to the State Personnel Department. (Exhibit 3 - Affidavit of Jackie Graham, ¶ 11, Attachment A). With the exception of the proposed layoff of a statutorily required position

(Director of Voter Registration), the plan was accepted as technically correct and in compliance with the Rules of the State Personnel Board.[1] (Exhibit 3 - Affidavit of Jackie Graham, ¶ 11).

In a layoff process, an efficiency rating (sometimes called the layoff score or retention score) is the numeric value used to rank employees in the layoff process. The efficiency rating is based on an employee's performance appraisal scores as well as seniority in the classification. This rating is computed by multiplying the sum of the points for performance by fifty (50) percent and the sum of points for seniority by fifty (50) percent and combining the sum of both factors. These ratings are based upon the total length of continuous service and the performance appraisal scores earned in the class or class series in the department affected by the layoff.[2] (Exhibit 3 - Affidavit of Jackie Graham, ¶ 5).

In the layoff plan, among other proposed budget cuts and layoffs, one Departmental Program Manager position was recommended to be abolished. (Exhibit 3 - Affidavit of Jackie Graham, ¶ 12, Attachment A). The classifications and the numbers of positions subject to the layoff process is within the discretion of the appointing authority for that department. (Exhibit 3

---

[1] Worley's October 9, 2003, layoff plan was later modified to postpone any action regarding the Supervisor of Voter Registration and to administer the layoff in phases.

[2] An employee's performance appraisal score is determined by averaging the employee's most recent three (3) annual evaluations or fewer if three are not recorded. An employee's seniority score is determined by crediting seventy (70) points for completion of the probationary period in the class and adding one-fourth (1/4) point for each additional full month or major fraction thereof for continuous service in the department affected by the layoff. (Exhibit 3 – Affidavit of Jackie Graham).

- Affidavit of Jackie Graham, ¶ 10).  In this case, two people in the Secretary of State's office held the classification of Departmental Program Manager: the Plaintiff, Robina [Jenkins] Wilson and Sharon Frith. Based on the layoff plan, retention scores for these two people in the position of Department Program Manager were calculated using the process previously described and set forth in the Rules of the State Personnel Board. Sharon Frith had an efficiency rating of 95.00 while Robina [Jenkins] Wilson's efficiency rating was 93.07. (Exhibit 3 - Affidavit of Jackie Graham, ¶ 13).  Based upon the efficiency rating, Plaintiff was one of the individuals laid off from the Secretary of State's Office. (Exhibit 4 - October 16, 2003, letter to Plaintiff from Worley).

Plaintiff was verbally notified on October 7, 2003, that because of budget cuts, she was being laid off.  On October 16, 2003, plaintiff was informed that the effective date of the layoff would be October 31, 2003.  Plaintiff was also provided information concerning her benefits and apprised of her reemployment rights. (Exhibit 4 - October 16, 2003, letter to Plaintiff from Worley).

Employees laid off in good standing are placed on the reemployment layoff register for the respective classification for a period of two years. During this time, the appointing authority cannot hire persons in this class from the register or appoint provisionally, as long as one available employee laid off by the appointing authority is on the reemployment register for the classification.  Also, no other department can hire any employees from an open-competitive register in the same class as long as one laid off employee is still available for the position.  Refusal of offers of reemployment forfeits an

individual's rights regarding reemployment. (Exhibit 3 - Affidavit of Jackie Graham, ¶ 8).

In the case of the Plaintiff, the only register for Departmental Program Manager is open-competitive; thus, the Plaintiff would have been offered the first available job for which this register was requested, until October 31, 2005. The register for Plaintiff's classification, however, was not requested by any appointing authority during the two year time period for absolute reemployment rights, nor was anyone provisionally appointed to this classification during this time period. (Exhibit 3 - Affidavit of Jackie Graham, ¶ 16).

After the Plaintiff was laid off, Sharon Viox, an Administrative Support Assistant III, served as "acting" Director of the Corporate Division. "Director of the Corporate Division" is a working title and is not a job classification within the merit system. (Exhibit 3 - Affidavit of Jackie Graham, ¶ 21). Due to death, illness, layoffs, or other legitimate reasons, it is not uncommon for employees to perform duties outside their job classification in an "acting" capacity. (Exhibit 3 - Affidavit of Jackie Graham, ¶ 18). Ms. Viox's merit system classification has remained an Administrative Support Assistant III from 2000 through December 1, 2007. (Exhibit 3 - Affidavit of Jackie Graham, ¶ 19). Moreover, a review of Ms. Viox's State personnel file shows that she did not receive a merit increase in salary from March of 2003 until March of 2006. The only salary increase received by Ms. Viox during this time period was a Cost of Living Raise (COLA) in 2005 which was passed by the Alabama Legislature for all state employees. (Exhibit 3 - Affidavit of Jackie Graham, ¶ 20).

6

## SUMMARY JUDGMENT STANARD

Defendants bear the initial burden of demonstrating the basis for their motion for summary judgment, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that they believe show an absence of any genuine issue of material fact. *Hairston v. Gainesville Publishing Co.*, 9 F.3d 913 (11th Cir. 1993). In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment is due to be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial. . . We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleadings themselves....

*Id.* at 324.

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is

"genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Matsushita Electrical Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court must review the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987). It is improper for the court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor." *Anderson*, 477 U.S. at 255. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

## ARGUMENT

Defendants' argument is set forth below in six parts: Qualified Immunity, Absolute Immunity, Count I, Count II, Count III and Count IV.

### I.    QUALIFIED IMMUNITY

This Court is doubtless familiar with the doctrine of qualified immunity. Nevertheless, for the ease of discussion, a general overview of qualified immunity jurisprudence follows. Courts afford government officials qualified immunity to shield them from liability when they are performing functions within the scope of their duties so long as their conduct does not violate a clearly established statutory or constitutional right of the complaining party.

8

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982).   Under the Supreme Court's holdings in *Harlow* and *Anderson v. Creighton*, 483 U.S. 635 (1987), a defendant is entitled to claim the affirmative defense of qualified immunity unless his or her actions violated clearly established law.   Qualified immunity protects "all but the plainly incompetent or those who knowingly violate law." *Malley v. Briggs*, 475 U.S. 335 (1986).   *See also, Edwards v. Gilbert*, 867 F.2d 1271, 1273 (11th Cir. 1989).

The defense of qualified immunity embodies an "objective reasonableness" standard, giving a government agent the benefit of the doubt unless his actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them.   *GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1366 (11th Cir. 1998).   Qualified immunity, thus, represents the rule, rather than the exception:   "Because qualified immunity shields government actors in all but exceptional cases, courts should think long and hard before stripping defendants of immunity." *GJR Investments, Inc. v. County of Escambia, Florida*, *quoting Lassiter v. Alabama A & M University, Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994).   "To be eligible for qualified immunity, the official must first establish that he was performing a 'discretionary function' at the time of the alleged violation of federal law occurred.   Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the

official is not entitled to qualified immunity." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

NANCY WORLEY

Defendant Worley's decision as to which classifications should be placed in the layoff process is an act "of a type that [fall] within the [official's] job responsibilities." *Crosby*, 394 F.3d at 1332 (*quoting Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).   Therefore, Defendant Worley was engaged in a discretionary function and meets her burden of establishing the first factor in the qualified immunity defense. (Exhibit 3 - Affidavit of Jackie Graham, ¶ 11).

The burden then shifts to the Plaintiff to show that "(1) the defendant has violated a constitutional right and (2) that this constitutional right was 'clearly established' at the time she did it." *Crosby*, 394 F.3d at 1332.   In *Saucier v. Katz*, 531 U.S. 991, 121 S.Ct. 2151, (2001), the Supreme Court stated that "[i]n a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence." *Id.* at 2155.   According to the Supreme Court, qualified immunity is "an immunity from suit rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 2156.   The Court has further advised that "if no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.*   If a violation could be made out on the parties' submissions, then the court must determine "if the right was clearly established." *Id*.   The key inquiry is, therefore, whether "it would be

10

clear to a reasonable person that their conduct was unlawful. *See also*, *Farmer v. Brennan*, 581 U.S. 824, 834 (1994).

Applying these principles to the case at bar, it is clear that Defendant Worley is entitled to qualified immunity.  As set out above, the State of Alabama experienced severe budget cuts in 2003, which resulted in hundreds of people being laid off, resigning, transferring, or taking voluntary demotions. (Exhibit 3 - Affidavit of Jackie Graham, ¶ 2).  The Secretary of State's Office ended up with an effective budget cut of 18 percent. (Exhibit 5 - Affidavit of Carolyn Middleton, ¶ 7).  Thus, in accordance with both the law and the Rules of the State Personnel Board, Worley, acting within her statutory and discretionary authority, made a decision that some employees of her office were to be laid off.  Under ALA. CODE § 36-26-26 (1975), an appointing authority may lay off an employee in the classified service whenever he deems it necessary by reason of shortage of work or funds or the abolition of a position or other material change in duties or organization.  Worley submitted a layoff plan to the State Personnel Director and the efficiency ratings of the employees in the affected classifications were calculated. It is regrettable that employees were laid off, both at the Secretary of State's Office and throughout state government.  Worley's decision to layoff a position in the classification of Departmental Program Manager, however, did not violate the Constitution or the state Merit System Act, much less clearly established law.  Therefore, Defendant Worley is entitled to qualified immunity.

STATE PERSONNEL BOARD MEMBERS

In her Complaint, the Plaintiff names as defendants in their individual capacity, the members of the State Personnel Board:  Joe Dickson, Harry McMillan, Horace Powell, John McMillan, and Joyce O'Neal.  The same principles of qualified immunity as discussed above apply to the members of the State Personnel Board.  Other than their names appearing in the Complaint as defendants, no action is alleged to have been taken by these defendants, in their individual capacity, against the Plaintiff.   When questioned as to why she was suing the State Personnel Board members in their individual capacity, Plaintiff responded:

> A:    Because I felt in their capacity they were supposed to protect me from the Nancy Worleys of State Service.
>
> Q:    Did you ever contact then?
>
> A:    No.
>
> Q:    Did you ever tell them you thought you had been mistreated?
>
> A:    No.
>
> Q:    Did you ever file anything over here [State Personnel]?
>
> A:    No.

(Exhibit 1 - Deposition of Plaintiff, p. 171, l. 3-12).

The Plaintiff never makes any allegations against the Defendants, much less points to a provision of law that was clearly established which the Defendants violated.  Thus, these defendants are entitled to qualified immunity.

12

II.    ABSOLUTE IMMUNITY

<u>ELEVENTH AMENDMENT IMMUNITY</u>

All individual Defendants are sued in their official capacity.  As such they are absolutely immune from damages under both state and federal law. Under federal law, the Defendants are entitled to Eleventh Amendment immunity. It is undisputed that claims for damages against an official of a State agency in his official capacity are claims against the State agency itself. *Lassiter v. Alabama A & M Univ.*, 3 F.3d 1482, 1485 (11th Cir. 1993); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990); *Morgan v. State of Ala.*, 5 F. Supp. 2d at 1296.  Absent abrogation or waiver, the Eleventh Amendment bars federal claims for damages against the states, including suits brought by a state's own citizens.  U.S. CONST. Amend. XI;  S*ee, e.g., Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993);  *Welch v. Texas Department of Highways and Public Transportation*, 483 U.S. 468, 107 S. Ct. 2941, 97 L. Ed. 2d 389 (1987).

<u>ARTICLE I, SECTION 14 OF THE ALABAMA CONSTITUTION</u>

To the extent, state law claims are alleged, Article I, Section 14 of the Alabama Constitution of 1901 provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity."  This constitutional provision is the wellhead of sovereign immunity for the State of Alabama.  *See Williams v. Hank's Ambulance Service, Inc.*, No. 1950683, 1997 WL 187101 (Ala. April 18, 1997); *Ex parte Franklin County Department of Human*

13

*Resources*, 674 So. 2d 1277 (Ala. 1996); *State Docks v. Saxon,* 631 So. 2d 943, 945-46 (Ala. 1994); *Phillips v. Thomas*, 555 So. 2d 81, 83 (Ala. 1989); *DeStafney v. University of Alabama*, 413 So. 2d 391 (Ala. 1981).

Immunity also exists for a state officer and/or employee who has not exceeded his or her authority, but has merely negligently performed his statutory duty while acting pursuant to statutory authority. *Taylor v. Shoemaker*, 605 So. 2d 828 (Ala. 1992); *Milton v. Espey*, 356 So. 2d 1201, 1202 (Ala. 1978). Determining which classifications to place in the layoff process is within the discretion of the appointing authority. Therefore, Worley is entitled to state law immunity. Clearly, any action or inaction on the part of the State Personnel Board members was within their authority, thus entitling them to immunity. Moreover, it appears from the Complaint that the State Personnel Board is alleged to have violated Plaintiff's rights, not the members, acting individually. The State Personnel Department, however, is not named as a defendant. If such were to be the case, the Board has absolute immunity under both the Alabama and Federal Constitutions, as discussed above.

### III. COUNT I - FAILURE TO CONSIDER PLAINTIFF'S SENIORITY AND SERVICE RATING IN THE LAYOFF

Plaintiff brings claims against Defendant Worley under both the State of Alabama Merit System law and the Fourteenth Amendment to the United States Constitution. Specifically, in Count I of the Complaint, Plaintiff alleges that Worley did not consider Plaintiff's seniority and service ratings in the layoff and this alleged failure forms the basis of Count I.

14

As is demonstrated, however, by the affidavit of Jackie Graham, State Personnel Director, both the service ratings and seniority of both employees in the Departmental Program Manager classification were considered in determining the layoff list. The formula used by the State Personnel Department in layoffs to determine efficiency ratings, is set forth in the Rules of the State Personnel Board, Rule 670-X-18-.01, *et seq.* These rules have the force and effect of law. *See ALA. CODE* § 36-26-9 (1975) ("Rules adopted under this section, not in conflict with the laws of Alabama, shall have the force and effect of law.")

The Plaintiff had the same seniority rating under the Board Rules as did Sharon Frith, the other employee in the same classification as Plaintiff. However, in regard to the service ratings, Sharon Frith's performance appraisals exceeded those of the Plaintiff. Therefore, based upon the efficiency rating formula, Frith's rating was higher.

No claim has been made concerning improper or discriminatory performance appraisals and, based upon Plaintiff's testimony; she believed that a professional and cordial relationship existed with her rating supervisor, Hilda Kendrick.

> Q:   How did you get along with Ms. [Hilda] Kendrick? [Plaintiff's rating supervisor]
>
> A:   The best year professionally for me was the last year of Mr. Bennett's administration, and that's because she had moved from the Capitol over to the – her office over to the State House, and I could – I was able to just accomplish a lot of things. But I adored her, you know, for being supportive

of me and my efforts in that office, so, you know, she was there for me.

Q:     Okay.  Would it be a fair statement to say that you had a professional and cordial relationship?

A:     Yes.

(Exhibit 1 - Deposition of Plaintiff, p. 27, l. 2-16).

Q:     Can you think of anything that she [Kendrick] did that you felt like she did not give you a fair shot or that she treated you fairly?

A:     No, because she normally deferred to my experience and knowledge in my job.

Q:     Okay.

A:     As a matter of fact, she gave me a great evaluation, one of my best evaluations.  It was her comments, you know, that I'm referring to, though.  She could see how conscientious I was.

(Exhibit 1 - Deposition of Plaintiff, pp. 28-29, l. 20-7).

Though Plaintiff did not make a race based claim in this case and her attorney instructed Plaintiff not to answer a question regarding race because "...It's not an issue in the case" (Exhibit 1 - Deposition of Plaintiff, p. 135, l. 1 -21), Plaintiff objects to her classification being placed in the layoff process, in part, because of her race.   It is apparent that the reason this lawsuit was filed is that Plaintiff simply disagrees with the way layoffs are required by law to be conducted.

Q:     So you're – from what I understand you to say is that you just disagree with the way the layoff process works.  You just think that you should take the years of service and lay people off that way.  Is that your belief?

16

. . .

> A:     Yes.  And I also believe that if you have one black and one white in a classification, that you would back off of that immediately.
>
> Q:     Okay.  So race should enter into a layoff plan as well as we [State Personnel] just need to go by years of service?
>
> A:     Yes.
>
> Q:     And if there's a black and a white in the classification, we just need to forget that classification?
>
> A:     I think so.

(Exhibit 1 - Deposition of Plaintiff, p. 85, l. 8-13; pp. 85-86, l. 22-10).

Plaintiff's claim that her seniority and service ratings were not considered in the layoff process is simply not supported by the evidence.  Plaintiff's efficiency score was calculated using seniority and performance appraisals.  The formula used for this calculation is set forth in the Rules of the State Personnel Board.  Plaintiff disagrees with the fact that the calculation is done by classification, not agency wide.

## IV.  COUNT II - APPOINTING AN INDIVIDUAL INTO PLAINTIFF'S CLASSIFICATION

In Count II of Plaintiff's Complaint, she alleges that Worley appointed an individual as "Acting Director, Corporate Division" and that this action violated both the Merit System Act and the Fourteenth Amendment to the United States Constitution.  Plaintiff further alleges that this was "her" classification which she held prior to her layoff.  (Complaint, ¶ 17.)

17

As was previously pointed out, no merit system classification exists for a Director of the Corporate Division. That title is a "working title" within the Secretary of State's Office. The Plaintiff was laid off from her merit system classification of Departmental Program Manager, not Director of the Corporate Division. (Exhibit 3 - Affidavit of Jackie Graham, ¶ 21).

Due to death, illness, budget constraints, or other legitimate reasons, it is not uncommon for employees to serve in "acting" capacities. (Exhibit 3 - Affidavit of Jackie Graham, ¶ 18). A question concerning "acting" status arose involving the Alabama Department of Corrections. Under state law, the Warden of Holman Prison is required to be the executioner for all executions carried out in Alabama. Due to budgetary constraints, a Regional Coordinator was serving as the "Acting Warden" at Holman Prison. A question was sent to the Alabama Attorney General inquiring as to whether an "Acting Warden" would have the authority to perform the execution. Finding that the Regional Coordinator, as "Acting Warden," could perform the duties of the Warden, the Attorney General opined that if there are no statutory prohibitions, a classified employee may be designated as an "acting officer" within state government. (Exhibit 6 - AG Opinion No. 95-188). This same holding can be found in an opinion to the Honorable Perry O. Hooper, Jr. (Exhibit 7 - AG Opinion No. 93-292).

In this case, there are no statutory prohibitions against someone serving in an acting "working title" capacity. Moreover, the Plaintiff testified that she does not believe that it is wrong for someone to serve in an "acting" capacity, and even admitted that she has served in an acting capacity as a supervisor.

18

> Q:    Do you think there's anything wrong with someone being in an acting capacity?
>
> A:    No.
>
> Q:    Okay.  Have you ever served in an acting capacity?
>
> A:    No.
>
> Q:    Have you ever served as an acting supervisor of licensing?
>
> A:    No.

. . .

[after being shown an application in which Plaintiff claimed to be an acting supervisor at the Real Estate commission]

> Q:    Okay. But you have served as an acting capacity, then?
>
> A:    Right.

(Exhibit 1 - Deposition of Plaintiff, pp. 56-57, l. 17-2; p. 578, l. 21-23).

It is undisputed that Sharon Viox, an Administrative Support Assistant III (ASA III), was given the working title of "Acting Director of Corporate Division."  It is also undisputed that the merit system classification of Sharon Viox did not change, nor was her salary increased as a result of the "acting" title.  Moreover, Viox did not receive any pay increase from 2003 until 2006 except for the statutorily mandated Cost of Living Raise in 2005. (COLA). (Exhibit 3 - Affidavit of Jackie Graham, ¶ 20).   Apparently, Plaintiff is of the opinion that if duties associated with a prior position are being performed by someone else, that she should have been reemployed to do them. (Complaint, ¶ 18)(Plaintiff was available for reemployment at the time Defendant Worley

19

appointed the individual to the position.)   Plaintiff's opinion, however, has no basis in fact or law and allowing someone to put in an "acting" status does not violate either the State Merit System law or the Fourteenth Amendment to the United States Constitution. (Complaint, ¶ 19, 20).

V.    COUNT III - WORLEY HIRED AN INDIVIDUAL INTO PLAINTIFF'S POSITION

In this Count of the Complaint, Plaintiff claims that Worley hired an individual to the position Plaintiff held prior to the layoff.    (Complaint, ¶ 23). Plaintiff claims that this person was hired even though she was not on the State Employment Register and that this action violated the law.

As set forth *supra,* Sharon Viox was an ASA III, appointed to that position in the Secretary of State's office in 2000.  (Exhibit 3 - Affidavit of Jackie Graham, ¶ 19).  Viox was given the working title of "Acting Director, Corporate Division."   No one was hired to perform this job and Viox received no additional compensation for performing extra duties.  Viox merely served in an "acting" capacity.

The Affidavit of Jackie Graham attests to the fact that no one was hired off the State Employment Register or appointed provisionally to the Merit System Classification occupied by the Plaintiff prior to the layoff from the date of the layoff and for a period of at least two years thereafter.  (Exhibit 3 - Affidavit of Jackie Graham, ¶ 16).

No violation of either the Merit System or the Fourteenth Amendment occurred.

VI.   COUNT IV - PERSONNEL BOARD FAILED TO INVESTIGATE AND FORCE WORLEY TO OBEY THE RULES OF THE STATE PERSONNEL BOARD

This count is against the "State Personnel Board," yet the State Personnel Board was never named as a defendant in this case.  Rather, the individual members of the Board were named in their official and individual capacity. When questioned as to why these Board Members were being sued, Plaintiff responded:

> A:   Because I felt in their capacity that they were supposed to protect me from the Nancy Worleys of State service.
>
> Q:   Did you contact them?
>
> A:   No.
>
> Q:   Did you ever tell them you thought you had been mistreated?
>
> A:   No.
>
> Q:   Did you ever file anything over here [State Personnel Department]?
>
> A:   No.

(Exhibit 1 - Deposition of Plaintiff, p. 171, l. 3-123).

Plaintiff's Complaint alleges that the State Personnel Board has the duty to require Defendant Worley to abide by the provisions of the Merit System Act and the rules and regulations made by the Board.  This allegation is based on Plaintiff's contention that Worley hired an individual either from an open-

21

competitive register or provisionally, into the classification from which the plaintiff was laid off.

Though Plaintiff waited nearly two years to file a Petition for Judicial Review with the State Personnel Board and said petition was untimely, an investigation was in fact conducted and the Plaintiff, through her attorney, was informed that no one in state government had been hired or provisionally appointed into the classification from which Plaintiff was laid off. (Exhibit 8 - July 22, 2005, letter to James E. Wilson, Jr.).

A state agency has the right and the duty to lay off personnel for reasons of economy and efficiency.  There is a presumption of good faith by the appointing authority in these layoffs. *Phelps v. Public Service Commission* 237 So.2d 499 (Ala. Civ. App. 1970).  Plaintiff failed to allege any bad faith at the time of the layoffs and waited nearly two years to make a claim that someone had been appointed to her job in violation of her layoff reemployment rights. An investigation revealed that this allegation was unfounded.  The State Personnel Board (and/or the individual defendants in their individual capacity) are due to be dismissed.

## CONCLUSION

Based upon the foregoing, the Defendants respectfully request that this case be dismissed with prejudice and that costs be taxed against the Plaintiff.

Respectfully submitted,
TROY KING
ATTORNEY GENERAL


/s/Alice Ann Byrne
Alice Ann Byrne (BYR015)
Attorney for Defendants


OF COUNSEL:

State Personnel Department
64 North Union Street, Suite 316
Montgomery, AL  36130
Telephone:    (334) 353-0046
Facsimile:    (334) 353-4481
E-mail:       AliceAnn.Byrne@personnel.alabama.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF Pacer filing system which will send notification of such filing to the following:

**James E. Wilson, Jr.**
**732 Carter Hill Road**
**Montgomery, AL  36106**
**E-Mail:  atywilson@netzero.net**


/s/Alice Ann Byrne
OF COUNSEL