Case 2:05-cv-01049-CSC   Document 37-2   Filed 12/14/2007   Page 1 of 13

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 1

1       IN THE UNITED STATES DISTRICT COURT FOR
              THE MIDDLE DISTRICT OF ALABAMA
2                    NORTHERN DIVISION
3    ROBINA JENKINS,
4           Plaintiff,
5    Vs.                              CASE NO.
                                      2:05-CV-1049-C
6
     NANCY L. WORLEY,
7    individually and in
     her official capacity
8    as Secretary of State,
     State of Alabama, et al.,
9
            Defendants.
10
                  *   *   *   *   *
11

12          DEPOSITION OF ROBINA JENKINS,

13   taken pursuant to notice and stipulation
14   on behalf of the Defendant, in the offices
15   of the Alabama Personnel Department, 316
16   Folsom Administrative Building, 64 North
17   Union Street, Montgomery, Alabama, before
18   Nicole Paulk, Certified Shorthand Reporter
19   and Notary Public in and for the State of
20   Alabama at Large, on August 28, 2007,
21   commencing at 8:58 a.m.
22
23

ORIGINAL

**Exhibit 1**
Jenkins, USDC 05 cv 1049
SPD Mtn for Summary Judgment

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 11

```
 1   A.   I started Brighton College in Melrose
 2        Park, Illinois, and after the first year,
 3        I did not want to go back.
 4   Q.   Okay.  And then you -- and that was prior
 5        to '79, I assume, and you moved down here.
 6        And were you working while you were going
 7        to school?
 8   A.   No.
 9   Q.   How were you supporting yourself when you
10        were going to school?
11   A.   I lived at home.
12   Q.   So your family was supporting you and
13        paying for your education?
14   A.   That's correct.
15   Q.   Okay.  Tell me your employment history,
16        please, starting with the present and
17        working your way back.
18   A.   I am currently employed with the Alabama
19        Real Estate Commission in the capacity of
20        departmental operations specialist.  Prior
21        to my termination, I was departmental
22        program manager in the secretary of
23        state's office in the corporations
```

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 12

```
 1              division, and my working title was
 2              corporations director.  Prior to 19 -- I
 3              was appointed to that position in 1997 by
 4              Mr. Bennett, who was then secretary of
 5              state.
 6     Q.       Okay.
 7     A.       Prior to that appointment, I had been
 8              administrative assistant to the director
 9              of the business and regulatory division.
10     Q.       Still at secretary of state's office?
11     A.       Yes.
12     Q.       I'm sorry, administrative assistant to?
13     A.       The director of the business and
14              regulatory division.  However, that office
15              was reorganized and the three sections
16              that made up the business and regulatory
17              division became individual, separate
18              divisions.
19     Q.       The three sections who made up that one
20              separated to three?
21     A.       Right.
22     Q.       Okay.  And that happened when, '97?  Is
23              that what you said?
```

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 27

| | | |
|---|---|---|
| 1 | A. | Yes. |
| 2 | Q. | How did you get along with Ms. Kendrick? |
| 3 | A. | The best year professionally for me was the last year of Mr. Bennett's administration, and that's because she had moved from the Capitol over to the -- her office over to the State House, and I could -- I was able to just accomplish a lot of things. But I adored her, you know, for being supportive of me and my efforts in that office, so, you know, she was there for me. |
| 13 | Q. | Okay. Would it be a fair statement to say that you had a professional and cordial relationship? |
| 16 | A. | Yes. |
| 17 | Q. | Did you have any reason to think that she in some way did not like you or did not respect you in any way? |
| 20 | A. | You mean Ms. Kendrick? |
| 21 | Q. | Yes, Ms. Kendrick. |
| 22 | A. | I -- no. If she did that, she didn't do it in my presence, so... |

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 28

1  Q.  So you have no reason to believe that she
2      had any animosity toward you?
3  A.  No. If she did, it was -- I never -- I'm
4      sensitive to racism and disparate
5      treatment and everything else, but in this
6      instance, if she was -- it was just a
7      professional relationship for me, and she
8      was supportive. And the last year of
9      Mr. Bennett's administration for me
10     professionally was probably the best year
11     for me. I accomplished more, but I had
12     her support, yes.
13 Q.  Do you think she treated you fairly?
14 A.  I hope so.
15 Q.  Do you have any reason to doubt that?
16 A.  No. But, you know, when you're talking
17     about that, it's like my expectation as a
18     black person too, you know, so -- would
19     play into that answer.
20 Q.  Can you think of anything that she did
21     that you felt like she did not give you a
22     fair shot or that she treated you fairly?
23 A.  No, because she normally deferred to my

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 29

1      experience and knowledge in my job.
2   Q.  Okay.
3   A.  As a matter of fact, she gave me a great
4       evaluation, one of my best evaluations.
5       It was her comments, you know, that I'm
6       referring to, though. She could see how
7       conscientious I was.
8   Q.  Did you know Vicky --
9   A.  -- Baylow.
10  Q.  -- Baylow. Do you know Vicky Baylow?
11  A.  Yes. One of her sons interned in our UCC
12      section.
13  Q.  And what was your relationship with Vicky
14      Baylow?
15  A.  It was nice. They all went to my baby
16      shower in west Montgomery, so I was
17      impressed.
18  Q.  So Vicky Baylow and Hilda Kendrick are
19      longtime merit system employees over
20      there?
21  A.  Ms. Kendrick was an appointee. Ms.
22      Baylow, yes, she was a merit system
23      employee.

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 56

```
 1            appraisal.
 2    Q.      And that's your testimony?
 3    A.      Yes.
 4    Q.      That's your understanding of it?
 5    A.      Yes.
 6    Q.      Okay.  And the person -- then in your
 7            testimony, the person with the lowest
 8            annual rating is laid off?
 9    A.      Yes.
10    Q.      Okay.  Now, what is your understanding of
11            someone being in an acting capacity?
12    A.      That they're in that acting capacity for
13            some reason because the person who
14            normally is in that position is maybe
15            unable to do their job or they're in --
16            waiting for -- to fill that position.
17    Q.      Do you think there's anything wrong with
18            someone being in an acting capacity?
19    A.      No.
20    Q.      Okay.  Have you ever served in an acting
21            capacity?
22    A.      No.
23    Q.      Have you ever served as an acting
```

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO

Page 57

1       supervisor of licensing?
2   A.  No.
3   Q.  I'll show you what I'm marking as
4       Defendant's Exhibit 1 and ask you if you
5       can identify it.
6                   (The referred-to document was
7                   marked for identification as
8                   Defendant's Exhibit No. 1.)
9   A.  Oh, you mean at the real estate
10      commission.  I'm sorry.
11  Q.  Well, I asked you if you have ever been an
12      acting -- served in an acting capacity,
13      and you said no; then I asked you
14      specifically if you've ever served as
15      acting supervisor for licensing and you
16      said no.  Now you --
17  A.  Well, my mind was thinking we were talking
18      about the secretary of state's office, and
19      in that office, no, I have never served in
20      any acting capacity.
21  Q.  Okay.  But you have served as an acting
22      capacity, then?
23  A.  Right.

Page 58

1  Q.  And you're currently serving as an acting
2      capacity?
3  A.  Well, they haven't called me acting, but I
4      guess so.
5  Q.  Well, you said you were acting.
6  A.  Well, the supervisor returned within four
7      months of my being there and went back to
8      her position even before my six-month
9      temporary status was over.
10 Q.  So February 13th of '06 when you put down
11     you were acting supervisor, was that
12     correct?
13 A.  Well, I know how that happened.
14 Q.  Was that a correct statement or not?
15 A.  No, it wasn't, because that was an
16     application that I keep several copies of,
17     and I --
18 Q.  Okay. Well, you certified that you --
19     that all statements attached to this
20     application are true and correct. I know
21     false statements may cause me to be denied
22     a chance for testing, to be removed from
23     the register, or to be released from

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 85

1  A.  Well, they had just come into the system
2      in the last two or three years, but they
3      were at IT making more money -- you know,
4      whether -- how much money they made really
5      doesn't matter, but the thing is, there I
6      was with 18 years of longevity, but that
7      didn't mean anything in the end.
8  Q.  So you're -- from what I understand you to
9      say is you just disagree with the way the
10     layoff process works.  You just think that
11     you should take the years of service and
12     lay people off that way.  Is that your
13     belief?
14 A.  Do you think it's fair to lay off an
15     18-year employee?
16 Q.  I get to answer -- ask the questions here;
17     you have to answer them.
18 A.  And the question again, please?
19          MS. BYRNE:  Please read it back.
20          (Requested portion of record
21          read, Page 85, Line 8.)
22 A.  Yes.  And I also believe that if you have
23     one black and one white in a

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 86

```
 1              classification, that you would back off of
 2              that immediately.
 3     Q.       Okay.  So race should enter into a layoff
 4              plan as well as we just need to go by
 5              years of service?
 6     A.       Yes.
 7     Q.       And if there's a black and a white in the
 8              classification, we just need to forget
 9              that classification?
10     A.       I think so.
11     Q.       Okay.  And that's the basis of your
12              lawsuit, is a disagreement with the way
13              that the layoff plan has been implemented
14              because you have a better solution?
15     A.       Those are your words, not mine.
16     Q.       Well, isn't that what you just said, that
17              you disagree with the layoff plan?
18     A.       Yes, but --
19     Q.       And you think that it should be based on
20              the years of service, correct?
21     A.       Yes.
22     Q.       And you think that anytime a
23              classification has a black and white, that
```

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 135

1  Q.   And obviously, if both are white, you
2       wouldn't have a problem with them being
3       laid off?
4  A.   I wasn't making it a racial issue, but I
5       guess, you know --
6  Q.   You're not making it a racial issue that
7       if a black and a white is in a
8       classification, you should exclude it?
9            MR. WILSON:  Object to the form.
10 Q.   Is that not a racial issue?
11 A.   Not the way you said with your inflection.
12 Q.   Is it a racial issue or not that you have
13      a black and a white and you don't think
14      they should be laid off if there's a black
15      and a white?
16 A.   I think it --
17           MR. WILSON:  I want to object to
18              the form.  It's not an issue
19              in the case.  I'm directing
20              my client not to respond to
21              the question.
22           MS. BYRNE:  And certify that.
23              And I again tell you, you

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO

**MERRILL LEGAL SOULTIONS**
Court Reporting*Legal Videography*Trial Services

Page 171

| | | |
|---|---|---|
| 1 | | the State personnel board in their |
| 2 | | individual capacity? |
| 3 | A. | Because I felt in their capacity that they |
| 4 | | were supposed to protect me from the Nancy |
| 5 | | Worleys of State service. |
| 6 | Q. | Did you ever contact them? |
| 7 | A. | No. |
| 8 | Q. | Did you ever tell them you thought you had |
| 9 | | been mistreated? |
| 10 | A. | No. |
| 11 | Q. | Did you ever file anything over here? |
| 12 | A. | No. |
| 13 | Q. | Do you have any idea how many layoffs |
| 14 | | occurred in 2003? |
| 15 | A. | No. |
| 16 | Q. | Do you have any recollection as to whether |
| 17 | | or not there were, in fact, other layoffs |
| 18 | | -- |
| 19 | A. | Yes. |
| 20 | Q. | -- in the State? |
| 21 | A. | Yes, I do. |
| 22 | Q. | Do you know how many people ended up being |
| 23 | | laid off? |

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO