IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBINA JENKINS,

      Plaintiff,

v.                                      CASE NO: 2:05-cv-1049-C

NANCY WORLEY, individually,
And in her capacity as
SECRETARY OF STATE of
Alabama, et al.,

      Defendants.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT**

Comes now Plaintiff, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and files this Memorandum In Opposition To Defendants' Motion For Summary Judgment, and shows the court the following.

**UNDISPUTED FACTS**

Plaintiff was a "classified employee" under 36-26-1 et. seq. Code of Alabama, 1975, the Merit System Act of the State of Alabama. On October 31, 2003, Plaintiff was laid off from her employment position as Department Program Manager in the Office of the Secretary of State. Plaintiff had been employed in the Secretary of State's office for thirteen (13) years and with the State of Alabama for seventeen (17) years.

The purpose of the Merit System Law is "to assure to all citizens of demonstrated capacity, ability and training an equal opportunity to compete for service with the State of Alabama, to establish conditions in the state service which will attract officers and

employees of character and capacity and to increase the efficiency of the governmental departments and agencies by the improvement of methods of personnel administration." See Exhibit 1, 36-26-3, Code of Alabama, 1975.

The Merit System Law provides that "employees laid off in good standing will be placed on the re-employment register for two years. During this time period, the department involved may not hire persons in the class from any register, or provisionally, as long as one available employee laid off by the department is on the re-employment register for the class, provided, however, that a person who refuses offers of re-employment shall forfeit such rights to subsequent placement, as provided under Rule 670-X-9-.02, Subsection 5; Removal of Names From the Register." See Exhibit 2, <u>670-X-18-.01 Rules of the State Personnel Board, State of Alabama</u>.

Chapter 670-X-5-.07, Rules of the State Personnel Board, (Hearing Procedure, Appeals to the Board, p. 11) provides, "Any officer, employee or citizen who feels that the Rules are working or are apt to work an unnecessary hardship upon him, or that the efficiency of the state service can be improved by amendment of the Rules may appear before the Board at any of its regular meetings and shall have the right to a complete hearing on such matter provided that a request for a hearing on such a matter must be filed in writing with the Director at least five days prior to the Board meeting. At least six signed copies of such request must be filed whereupon it shall be the duty of the Director immediately to transmit a copy of the request to each Board member and to the Governor."

Chapter 670-X-7-.01 (Position Classification Plan, p. 18) provides, that "the director shall administer and maintain the classification plan in accordance with the State

Merit System Law, such approvals required by the Board or the Governor and these Rules."

Section 670-X-7-.04 (Allocation of Positions to Classes, p. 18)) provides, "Every position in the state service shall be allocated to one of the classes established by the classification plan. Those positions which are substantially similar with the respect to difficulty, responsibility and character of work, require generally the same kind and amount of training an experience for proper performance, and merit approximately equal pay shall be allocated to the same class."

Section 670-X-7-.05 (Allocation of New Positions, pp. 19, 20)) provides, "When new positions are created in any department, complete job descriptions shall be furnished the Director by the department, and he shall study the duties and responsibilities of the new position and determine the proper classification. If any appropriate classification does not already exist he shall prepare a new class specification and submit it to the Board for approval at its next regular meeting."

Section 670-X-7-.06 (Reallocations, p. 20) provides, "An appointing authority shall report to the Director the addition of new assignments or the taking away of old ones. The Director shall investigate such changes in order to provide a basis for determining the effect on the classification of the position."

Chapter 670-X-9-.03 (Personnel Selection Procedures, Certifications and Appointments, p. 31) provides, "All vacancies in the classified service shall be filed by transfer, promotion, demotion, original appointment, reemployment, temporary appointment, emergency appointment, exceptional appointment, provisional appointment, or conditional appointment as provided in the Act."

670-X-9-.03 (2) (a) (Appointments from Eligible Lists, Request for Certification, p. 32) provides, "Whenever a vacancy in a position in the classified service it to be filled other than by transfer, demotion or extraordinary appointment, the appointing authority shall make written request for certification of names on a form prescribed by the Director. This form shall contain a statement of the class title of the position, together with such other pertinent information as may be required by the Director. The appointing authority shall make such request a reasonable time in advance of the date the new employee is to begin work."

Chapter 670-X-11-.01 (Hours of Work, Uniform Regulations, p. 37) provides, "the Director shall administer regulations for maintaining uniform and equitable hours of work required of all employees in the state service as adopted by the Board and approved by the Governor. The number of hours shall be uniform for all whose positions are allocated to the same class, unless specifically provided otherwise by action of the Board, and recorded in its minutes, together with its reason for each exception, but the hours for different classes may be different."

670-X-11-.07 (Compensatory Time, p. 38) provides, "Notwithstanding any department policy to the contrary, it shall be the policy of the State of Alabama to use compensatory time, rather than wages to compensate employees subject to the provisions of the Fair Labor Standards Act for performing overtime work. Departmental overtime policies contrary to the overall state policy must be approved by the State Personnel Board. Approval by the State Personnel Board may be made in those cases where compelling reasons are cited by the appointing authority. Overtime, overtime

compensation, and compensatory time are defined by the terms as used in the Fair Labor Standard Act."

Immediately after Plaintiff was laid off, Defendant Worley appointed Sharon Viox "Acting Director, Corporate Division," the position Plaintiff held. Viox is classified as ASA III in the classified service. Viox Deposition, pp. 23, 24).

On or about July 18, 2005, Plaintiff served the State Personnel Board for the State of Alabama and Defendant Worley a Petition for Review, pursuant to 41-22-1 and 36-26-1, Code of Alabama, 1975. Plaintiff further requested a hearing on the petition. See Exhibit 3.

On or about July 22, 2005, the General Counsel for the State Personnel Department and the State Personnel Board responded to Plaintiff's Petition For Review, indicating, inter alia, that the claim of "possible hiring of individual into Plaintiff's classification would violate State Personnel Board rules and regulations. Based upon Ms. Jenkins petition, we checked our records to determine if anyone had been hired through an open-competitive register as a Departmental Program Manager. Our records indicate no such appointment since March of 2003. Likewise, we checked provisional appointments and determined that the Secretary of State's office does not have any provisional employees. If you can provide the names of individuals whom Ms. Jenkins believes were appointed to a DPM position or who is serving in a provisional status, we will be happy to investigate further. See Exhibit 4.

On or about August 15, 2005, Plaintiff responded to the correspondence of the General Counsel dated July 22, 2005, and indicated that Sharon Viox was appointed

Acting Director Corporate Division immediately after the layoff of Ms. Jenkins. See Exhibit 5.

36-26-6, Code of Alabama, 1975, provides, "It shall be the duty of the State Personnel Board to make investigation, either on petition of a citizen, taxpayer or interested party or of its own motion, concerning the enforcement and effect of this article and to require observance of its provisions and the rules and regulations made pursuant thereto." See Exhibit 6.

The State Personnel Board did not provide Plaintiff a hearing as a result of her Petition For Review. See Dickson Deposition, p. 96.

**Nancy Worley**

Nancy Worley testified in deposition, I was elected Secretary of State for the State of Alabama, November, 2002 (p. 8). See Exhibit 7. I took office January, 2003 (p. 9). After assuming office, I reviewed the Merit System Act generally but consulted with attorneys on the intricacies of that law (p. 11). I received notification that the Secretary of State's budget was going to be cut about eighteen percent (18%). I am generally familiar with the Rules of the State Personnel Board for the State of Alabama but not specific details (p. 17). The rules state that I had to submit a layoff plan to the State Personnel Board (p. 19, 20). The plan submitted abolished one department program manager position (p. 38). The plaintiff was the person who was laid off (p. 39).

The layoff plan submitted to the State Personnel Director and the Personnel Board called for a reduction in salary of Attorney Charles Grainger by 18%. His salary was approximately $100,000.00. Attorney Grainger was terminated after submission of the layoff plan (p. 30). The plan also included the layoff of the supervisor of voter

registration for an approximate saving of $65,000. The State Personnel Board did, in fact, tell either Mr. Granger or Mrs. Swedenburg, or maybe both, that the position of supervisor of voter registration had been created by the Legislature and there was a problem with that particular area of the layoff plan (p. 33). The State Personnel Director responded, indicating "We are uncertain of our authority to approve a layoff plan which includes the supervision of voter registration that is statutorily mandated and required by law to carry out specific statutory functions. As such, an opinion request has been made to the Attorney General's office to address whether the Supervisor of Voter Registration is subject to a layoff plan. In light of the concern regarding the supervisor of voter registration and attorney Grainger, the [18%] saving proposal in the layoff plan would not be correct as to savings (p. 35, 36). Attorney Trey Granger subsequently wrote State Personnel Director to confirm a decision to modify the pending layoff plan. I do not recall submitting a modified layoff plan (p. 36, 37).

Carolyn S. Middleton, the State Budget Officer for the State of Alabama through affidavit testified, "The budget [2003] as passed represented a 12% budget cut for the Secretary of State's office. The additional money, however, could mainly be used for federal matching money under HAVA." See Exhibit 8.

The Secretary of State's budget from the State General Fund for the year 2002 was $837,864; for 2003, $672,225; for 2004, $1,100,663; and for 2005, $1,539,683. See Exhibit 9.

Subsequent to the Plaintiff's layoff, I asked Ms. Viox to assume the duties of taking up leave slips and turning in evaluations and those kinds of responsibilities. I did not officially appoint anyone as the acting director of the corporate division (p. 48). I

asked the personnel director to get a business card for Ms. Viox indicating "Sharon Viox, Acting Director Corporate Division" (pp. 49, 50). I recall vaguely talking to Ms. Viox about some added responsibilities, and I am sure I went over those things such as evaluations and taking up leave slips and scheduling vacations and whatever (p. 52). When I asked Viox to assume the responsibility of Acting Director, her classification in state service was an ASA III (Administrative Support Assistant). I did not notify State Personnel regarding Ms. Viox assuming the position. I didn't appoint her to anything, so I didn't notify State Personnel about her added responsibilities (p. 53). I can cite no authority whatsoever giving me the authority to appoint Ms. Viox to the responsibilities of this position. I can't cite any Rule of the State Personnel Board that tells me I can or can't give Viox her added responsibilities and duties (p. 54). I don't know of any state law that told me to give her or not to give her added responsibilities. Viox was never given an official appointment that went through State Personnel (p. 55). Viox did not receive any official appointment under 670-X-9-.03.

    I don't have any recollection that I checked to see whether Viox was on the State Register for the position of departmental program manager. Viox was not a provisional appointment (p. 59).

    On occasion Viox, after the appointment, would call and tell me she worked more than eight hours a day. Viox also got approval from me to work some week-ends (p. 61). I approved comp time when Viox worked on week-ends or on holidays or in some additional capacity to her 40-hour week. We did not have enough money to pay comp time in the secretary of state's office, so we gave hour for hour off for comp time (p. 61). I don't believe the State Personnel Director was aware of the process individual agencies

used for overtime, comp time. I don't think I was required to submit the overtime and comp time to the State personnel Director (p. 62).

I left the Secretary of State's office January, 2007 (p. 63). Viox was handling the responsibilities of acting director of the corporate division when I left office (p. 64).

**Joe Nathan Dickson**

Joe Nathan Dickson testified in deposition, I serve as chairman of the Alabama State Personnel Board. I was appointed to the Board February, 1992 (p. 6). See Exhibit 10. I am generally familiar with the rules and regulations of the State Personnel Board (p. 7). The Board acts as a supervisor of the State Personnel Director. The Director is appointed by the Board (p. 7). I am generally familiar with the Merit System Act (p. 8). Pursuant to 36-26-6, Code of Alabama, 1975, the Board is required to make an investigation on petition of a citizen, taxpayer or interested party concerning the enforcement and effect of the statute (pp. 11, 12).

My interpretation of Rule 670-X-5-.07 of the Rules of the State Personnel Board is, "if you feel that something is wrong, what you do is file a petition with the [State Personnel] Director and the director gets it to the Board. And once the director gets the petition, he gives copies to the members and to the Governor. I have never seen Plaintiff's Petition For Review. I don't know whether the petition was ever presented to the State Personnel Board (p. 25). If Defendant Worley had appointed a person to plaintiff's position within two years without first offering the position to plaintiff, it would have been in violation of the Merit System Act. Under the Rules of the State Personnel Board, the board could have enforced or corrected the violation (pp. 30, 31). If Defendant Worley appointed Viox to the position held by plaintiff immediately after her

layoff and plaintiff petitioned the personnel director, Plaintiff would be entitled to a hearing" (pp. 36, 37).

There is no State Personnel Board Rule or Merit System Law regarding appointing acting personnel. The appointing authority runs his shop and they stay within classification. But if they decide that somebody is acting; there's nothing we can do about it (p. 42). Viox's appointment was not an appointment under any of the categories set forth in Rule 670-X-9-.03, Rules of the State Personnel Board (pp. 44-51). The position Acting Interim Director is not a position in classified service of state government (p. 53). If Viox in state service is classified as an ASA III and is working as the acting division director, she is working out of her classification (p. 58). Defendant Worley didn't come before our board and request the classification of acting division director (p. 76).

**Sharon Viox**

Sharon Viox testified in deposition, I was appointed to a position in the Secretary of State's office May of 1996. I was classified in state service as an ASA I. About September 2000, I was appointed to the classification ASA III (pp. 11, 12). See Exhibit11. I am currently classified as ASA III and hold the position of Division Director Corporations Division (p. 13). I worked for the Plaintiff a few years (p. 16). After Plaintiff was laid off, Worley called me over and said she was going to appoint me as supervisor and acting director. This occurred about a month after Plaintiff was laid off (p. 23). Exhibit two is a list of my responsibilities and duties as an ASA III (p. 24). See Exhibit 12.

I did not receive any documents or correspondence from Defendant Worley indicating my appointment to the acting position as a division director. The only thing I received was some business cards with my name and that little title on it. I did not receive any document from the State Personnel Board indicating that Defendant Worley had appointed me to the acting director's position (p. 25). Exhibit 4 includes a list of my duties and responsibilities as of the date of the evaluation 1/2/04 (p. 30). My duties and responsibilities increased after being appointed the acting director (p. 31). See Exhibit 13. Worley indicated to me that my appointment as acting director was a temporary appointment (p. 38). I never applied through the State Personnel Department for the classification of division director. I have never been included on the State Personnel register as a person eligible to be appointed to the division director's position in the Secretary of State's office (p. 39). I have never been listed by the State Personnel Department as a person eligible for appointment to the position of division director in the Secretary of State's office. I have never received a salary adjustment as a result of being appointed acting director of the Corporate Division in the Secretary of state's office (p. 40). I have never taken an examination offered by the State Personnel Board for the classification of division director of the Secretary of State's office. I have never held a position or held a classification in state service as a state professional trainee to the position of department program manager (p. 41). On evaluation [forms] of employees I evaluated after the appointment of acting director, I am indicated as the Rating Supervisor on the evaluations (p. 43). There were occasions after my appointment as acting director that I worked beyond regular working hours and on week-ends (pp. 50, 51). I was told because of the position I was holding as supervisor, I couldn't get comp

time unless I worked on a holiday, then I would get comp time for that…But other than that, if I would come in a half hour early or stay an hour late, I didn't get any comp time for that, because of the fact that I was supervisor (p. 52). Sometimes, I would feel I should have been compensated at a rate of a division director (p. 53).

## ARGUMENT AND CITATION OF AUTHORITIES

"A Motion for Summary Judgment should be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with the Affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56 (c)" Durruthy v. Pastor 351 F. 3d 1080 (11th Cir. 2003)

> Where a summary judgment motion is based on a qualified immunity, we are required to resolve all issues of material fact in favor of the Plaintiff. See e.g., Sheth v. Webster, 145 F. 3d 1231, 1236 (11th Cir. 1998). "We then answer the legal question of whether the defendant [ ] [is] entitled to qualified immunity under that version of the facts." Thornton v. City of Macon, 132 F. 3d 1395, 1997 (11th Cir. 1998) . . .
>
> Qualified immunity offers "complete protection for government officials sued, in their individual capacities as long as "their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known. Thomas v. Roberts, 261 F 3d 1160, 1170 (11th Cir. 2001) [quoting Harlow v. Fitzgerald, 457, U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)] (additional quotations omitted). . .
>
> In order to receive qualified immunity, the public official "must first prove that 'he was acting within scope of his discretionary authority when the allegedly wrongful acts occurred'." Courson v. McMillian, 939 F. 2d 1479, 1487 (11th Cir. 1991) (quoting Rich v. Dollar, 841 F. 2d 1558m 1563 (11th Cir. 1998). If the defendant was not acting within his discretionary authority, he is ineligible for the

benefit of qualified immunity. . . Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the qualified immunity is not appropriate. See id. The Supreme Court recently set forth a two-part test for evaluating a claim of qualified immunity. As a "threshold question," a court must ask, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U. S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). If a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established. Id. This second inquiry "must be undertaken in the light of the specific context of the case, not as a broad general proposition. Id.; See also Marsh v. Butler County, 268 F. 3d 1014, 1031-33 [11th Cir. 2001 (enbanc)]. Lee v. Ferrano, 284 F. 3d 1188, 1190, 1193, 1194 (11th Cir. 2002)

**NANCY WORLEY CLAIM OF QUALIFIED IMMUNITY**

Plaintiff asserts in Count I of her complaint that pursuant to the Merit System Act she was to be placed on the re-employment register for two years in the classification in which she was laid off and that, during this period, the appointing authority should not hire anyone in the classification from the register or provisionally as long as Plaintiff was available for re-employment. Plaintiff further asserts that Defendant appointed Sharon Viox to the position Plaintiff held prior to the lay off in violation of the Merit System Act.

Defendant testified that, upon assuming the office of Secretary of State, she reviewed the Merit Systems Act generally and consulted with an attorney on the

intricacies of the law. Defendant further testified she reviewed the Rules of the State Personnel Board which included the rule governing the rights of laid off employees. There can be no known question as to whether the "layoff law" had been developed in such concrete and factually defined context that Defendant understood what action would violate the law. Indeed, the Defendant in correspondence to Plaintiff advising her of the layoff, also advised Plaintiff she would be placed on the re-employment register for two years and that no one would be appointed to the position from the register or provisionally.

Defendant testified that shortly after Plaintiff's layoff, Defendant asked Viox to assume the duties and responsibilities of "Acting Director, Corporate Division." Defendant further testified that she did not notify the State Personnel Department regarding the Viox appointment. The State Personnel rules, however, govern the appointment of all employees in state service. Defendant could cite no authority, Rule of the State Personnel Board or state law which gave her the right to appoint Viox to the position. "For law to be clearly established to appoint that qualified immunity does not apply, law must have earlier been developed in such concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violated federal law." Lassiter v. Alabama A & M University Board of Trustees, 28 F. 3d 1146, 1149.

Clearly, the facts establish that Defendant violated the Merit System Law and Plaintiff's rights when she appointed Viox to the position Plaintiff held prior to her layoff. "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel, not just suggest or allow or raise a question about, the conclusion for every

like-situated, reasonable agent that which defendant is doing violates federal law in circumstances" Lassiter, supra, 1150.

Sharon Viox testified that, at the time Defendant Worley appointed her Acting Director Corporate Division, her classification in state service was an ASA III. Viox further testified that she currently holds the position of Director of the Corporate Division. However, she has never received a salary adjustment established by State Personnel for a director. Viox testified that her duties and responsibilities increased after Defendant appointed her Acting Director; that she never applied through the State Personnel Department for the classification division director; was never included on the register as a person eligible to be appointed to the position of division director; has never been listed by State Personnel as a person eligible for appointment as division director. The Rules of the State Personnel Board and the Merit System Law clearly set forth a procedure to assure that all citizens have an equal opportunity to compete for employment with the State of Alabama. Defendant's appointment of Viox as Acting Director, Corporate Division, violated the Rules of the State Personnel Board and the Merit System Law.

The action of Defendant Worley in this matter renders her ineligible for the benefit of qualified immunity. The facts demonstrate that Plaintiff's rights under the Merit System Law were violated by Worley. There is no question that the Merit System Law and the Rules of the State Personnel Board were clearly established. Defendant Worley's affirmative defense of qualified immunity is due to be denied.

**STATE PERSONNEL BOARD CLAIM OF QUALIFIED IMMUNITY**

Plaintiff asserts that she served the State Personnel Board with a Petition For Review wherein, she alleged that her rights under the Merit System Act had been violated by Defendant Worley, and requested a review pursuant to 36-26-6 (b) (3), Code of Alabama, 1975. The Petition For Review specifically requested a hearing.

Joe Dickson testified that he is chairman of the State Personnel Board; generally familiar with the Rules and Regulations of the State Personnel Board; generally familiar with the Merit System Act. Dickson testified he had never seen Plaintiff's Petition For Review. "I don't know that the petition was ever presented to the board. Under state law, the Board is required to make an investigation on petitions of a citizen and to grant a hearing where one claims rights have been violated under the Merit System Law. If Defendant Worley appointed a person to Plaintiff's position within two years without offering the position to Plaintiff, it would have been a violation of the Merit System Act."

Joe Dickson further testified Viox's appointment was not an appointment under any Rule of the State Personnel Board, "The position of Acting Director, Corporate Division is not a position in classified service of state government; I don't know whose fault it is that the board didn't see the petition."

Joe Dickson and the State Personnel Board are charged with the duty of enforcing employee rights under the Merit System Act. The Board is also charged with knowledge of the law. When the legislature directs the Board to exercise its jurisdiction in a certain matter, the Board has no discretion to decline the exercise of that jurisdiction. State Personnel Board v. Alvin T. Prestwood, 702 So. 2d 176, 179 (Ala. Civ. APP, 1997). The failure to provide a hearing to Plaintiff violated her rights under the Merit System Law.

There can be no question that Plaintiff's right to a hearing was clearly established. The Defendant Board is ineligible for the benefits of qualified immunity.

**WORLEY AND STATE PERSONNEL BOARD'S ILLEGAL LAYOFF OF PLAINTIFF**

In February of 2003, the Governor of Alabama recommended an 18.85% reduction in the budget of the Secretary of State's office. As a result of the recommendation, Plaintiff, a classified employee in state service, was laid off. The Secretary of State submitted a layoff plan to the State Personnel Director which allegedly complied with the proposed 18.85% budget cut. In reality, the Secretary of State's office did not meet the budget cuts of 18.85% for several reasons: (1) the salary of an attorney in the office was to be cut; however, it was later disputed; (2) the plan included the layoff of a statutory position which was not allowed by law. Worley testified she never resubmitted a lay off plan to State Personnel which met the recommended 18.85% in budget cuts.

Carolyn S. Middleton, the State Budget Officer for the State of Alabama, stated in an Affidavit that "the budget [2003] represented a 12% budget cut for the Secretary of State's office. The additional money, however, could mainly be used for Federal matching money under "HAVA"." A review of the budgets passed for the Secretary of State's office subsequent to the recommended budget cuts of 2003 ($672,225) indicates a substantial increase over the budget of 2002 ($837,225). The budget passed for the year 2004 was $1,100,663 and for the year 2005 $1,593,683. Under the Merit System Law, Plaintiff acquired the right to be reappointed to her position where the economic shortfall resulting in her layoff had been abated. Plaintiff, in correspondence to Defendant,

requested a reappointment in November, 2004. Defendant Worley denied receiving the correspondence. Defendant Dickson testified that one avenue for Plaintiff to be reappointed to her position was to make a request to the appointing authority.

Defendant Worley and State Personnel Board failed to comply equitably with the recommended budget cuts and to reappoint Plaintiff to her position after reasons for her layoff were abated. This failure to act by Defendant Worley and the Board violated Plaintiff's rights under the Merit Systems Act and state law. Defendants' request for qualified immunity should be denied.

## CONCLUSION

The conduct of the Defendants clearly violated Plaintiff's rights under the Merit System Law and the Rules of the State Personnel Board. The law prohibits Defendants from appointing anyone to the position Plaintiff held for a period of two years without first offering the position to Plaintiff. The law was clearly established and any reasonable person would have to know that the appointment of Viox violated the law under the act. The Board failed to provide Plaintiff a hearing, violating the Merit System Act and thereby depriving Plaintiff of her property interest in the position.

WHEREFORE, Plaintiff respectfully requests the court deny Defendants' Motion For Summary Judgment, and such other, further and different relief the court deems proper.

                                              Respectfully submitted

                                              /s/James E. Wilson, Jr.

Of Counsel:
James E. Wilson, JR.
732 Carter Hill Road
P. O. Box 6237
Montgomery, Alabama 36106
Tel: 334-834-9899
Fax: 334-834-7557
Email: ATYWILSON@NETZERO.NET

## CERTIFICATE OF SERVICE

I hereby certify I have served the foregoing on the following by placing a copy in the United States Mail postage prepaid this 7th day of March, 2008.

Alice Ann Byrne, Esq.
State Personnel Department
64 North Union Street
Room 316
Montgomery, Alabama 36130

/s/James E. Wilson, Jr.